SCANNED

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 04-80153-CIV-COHN

SECURITIES AND EXCHANGE COMMISSION,

Plaintiff,

vs.

DARREN SILVERMAN and
MATTHEW BRENNER,

Defendants.
_______________________________________/

## ORDER GRANTING IN PART MOTION FOR DISGORGEMENT

THIS CAUSE is before the Court upon Plaintiff's Motion and Memorandum of Law to Set Disgorgement and Civil Penalty Amounts as to Defendants [DE 22] ("Motion for Disgorgement"). The Court has considered the Motion for Disgorgement, Defendants' Response [DE 25], Plaintiff's Reply [DE 26] and is otherwise advised in the premises.

## I. BACKGROUND

Plaintiff, Securities and Exchange Commission (the "Commission"), brought the Motion for Disgorgement pursuant to the Judgments of Permanent Injunction and Other Relief ("Judgments") entered in May 2004 against Defendant Darren Silverman ("Silverman") [DE 19] and Defendant Matthew Brenner ("Brenner") [DE 21]. Both Defendants consented to the entry of these Judgments [DEs 18, 20].[1]

---

[1] Not only did each Defendant consent to the Judgments, they each acknowledged that they had read the provisions of the Judgments and agreed that such provisions be incorporated into their consents. (Silverman Consent, DE 18, ¶ 4; Brenner Consent, DE 20, ¶ 4.)

The Judgments order that Defendants shall "disgorge, with prejudgment interest, all ill-gotten profits or proceeds that he received, directly or indirectly as a result of the acts or courses of conduct described in the Complaint." (Silverman Judgment, DE 19, p. 7; Brenner Judgment, DE 21, p. 7.) The Judgments stated that should the parties be unable to agree to the amount of disgorgement, the Court, upon the Commission's motion, would determine the amount of disgorgement and prejudgment interest. (Id.) The Judgments further provided that "Defendant may not, by way of defense to such a motion, challenge or otherwise contest the allegations of the Complaint, which shall be deemed true by the Court for purposes of this motion." (Id.) In addition, the Court would be required to determine, upon the Commission's motion, the amount of civil penalties, if any, that Defendants shall be required to pay pursuant to Section 20(d) of the Securities Act, 15 U.S.C. § 77t(d), Section 21(d)(3) of the Exchange Act, 15 U.S.C. § 78u(d)(3), and Section 209(e) of the Advisers Act, 15 U.S.C. §80b-9(e). (Id.)

Four years after the entry of the Judgments, the Commission is moving for the Court to find that Defendants are liable, jointly and severally, for disgorgement in the amount of $8,117,527, prejudgment interest in the amount of $2,606,739.86, and impose civil penalties of $120,000 on Silverman and $110,000 on Brenner. (Motion for Disgorgement, DE 22, p. 1.) Defendants argue that disgorgement, prejudgment interest and civil penalties are unwarranted because they entered into a settlement agreement with the SEC four years ago and in the Settlement agreement neither Silverman nor Brenner admitted or denied the allegations of the complaint. (Response, DE 25, p. 2, 6.) Defendants also point out that the Bankruptcy Trustee Attorneys Report to creditors and investors dated April 18, 2005, found that the enterprise wasn't a Ponzi scheme,

but a legitimate business plan which may have been foolish but did no less than it promised. (Id. at 2.) Consequently, the Defendants argue that the SEC cannot seek disgorgement because there is no showing of any fraud or unjust enrichment and to assess such a disgorgement amount would violate all principles of equity. (Id., at 7-8.) In the alternative, Defendants argue that the concepts of laches and/or estoppel bar the Commission's actions. (Id., at p. 12.)

## II. ANALYSIS

### A. Disgorgement

Disgorgement is an equitable remedy designed to deprive a wrongdoer of his unjust enrichment and to deter others from committing future violations of securities laws. S.E.C. v. Friendly Power Company, LLC, 49 F.Supp.2d 1363, 1372 (S.D. Fla. 1999). The Commission's burden in determining the amount of disgorgement is light, and exactitude is not required. S.E.C. v. ETS Payphones, Inc., 408 F.3d 727, 735, (11th Cir. 2005). "The SEC is entitled to disgorgement upon producing a reasonable approximation of defendant's ill-gotten gains." S.E.C. v. Calvo, 378 F.3d 1211, 1217 (11th Cir. 2004). The burden then shifts to defendants to demonstrate that the SEC's estimate is not a reasonable approximation and "so long as the measure of disgorgement is reasonable, any risk of uncertainty should fall on the wrongdoer whose illegal conduct created the uncertainty." Calvo, 378 F.3d at 1217 (internal citation omitted).

Additionally, "where a defendant's record-keeping or lack thereof has so obscured matters that calculating the exact amount of illicit gains cannot be accomplished without incurring inordinate expense, it is well within the district court's

discretion to rule that the amount of disgorgement will be the more readily measurable proceeds received from the unlawful transaction." Calvo, 378 F.3d at 1217 - 18. However, the Court should be mindful that the "power to order disgorgement extends only to the amount with interest by which the defendant profited from his wrongdoing. Any further sum would constitute a penalty assessment." ETS Payphones, Inc., 408 F.3d at 735 (quoting S.E.C. v. Blatt, 583 F.2d 1325, 1335 (5th Cir. 1987)).

The Commission's forensic accounting expert found that the severely inadequate financial records from Silverman and Brenner's companies make it impossible to identify what happened to $8,177,527. (Motion for Disgorgement, DE 22, p. 10.) The Commission concludes that it is likely that the unaccounted for funds comprise the ill-gotten gains Silverman and Brenner directed to themselves or for their benefit. (Id.) Therefore, the Commission requests this amount be disgorged.

Defendants argue that they entered into a Settlement Agreement with the Commission that specifically did not accept or deny the allegations in the Complaint. (Response, DE 25, p. 2,6.) As a result, Defendants argue that no fraud or ill-gotten gains have been proven and disgorgement is inappropriate. (Id., at p. 12.)

The document that Defendants rely upon has no bearing on the Judgments entered by this Court. The document is titled "Order Instituting Administrative Proceedings Pursuant to Section 15(b) of the Securities Exchange Act of 1934 and Section 203(f) of the Investment Advisers Act of 1940, Making Findings, and Imposing Remedial Sanctions as to Matthew Brenner and Darren Silverman" ("Order"). (Response, Ex. A, DE 25-2.) It states that in anticipation of the proceeding, Brenner and Silverman submitted Offers of Settlement that the Commission has accepted. (Id.)

The Order does mention that any re-application for association as a broker, dealer or investment advisor, would be subject to satisfaction of any disgorgement order. (Response, Ex. A, DE 25-2.) There is no language limiting the Commissions' right to disgorgement, prejudgment interest and civil penalties included in the Judgments.

The Court finds that the Order does not impede the Commission's ability to seek disgorgement, prejudgment interest and civil penalties. For purposes of the Motion for Disgorgement, Defendants have admitted to the fraud alleged in the Complaint and disgorgement is warranted. (Silverman Consent, DE 18, ¶ 4; Silverman Judgment, DE 19, ¶ VII; Brenner Consent, DE 20, ¶ 4; Brenner Judgment, DE 21, ¶ VII.)

Defendants contend that laches and/or estoppel bar the Motion for Disgorgement. Defendants argue that the delay of four years was so outrageous, unreasonable an inexcusable that it constitutes a virtual abandonment of the Commission's right to bring an action for disgorgement. (Response, DE 25, p. 13.) Defendants allege that they are severely prejudiced in their ability to defend themselves because the bankruptcy trustee has closed its case and destroyed its records. (Id., at 14 - 15.) Despite their argument, Defendants do not address whether the defense of laches or estoppel can be used against the Commission.

The Court finds that the Commission is not subject to the defense of laches in enforcing its rights. See United States v. Summerlin, 310 U.S. 414, 416 (1940); United States v. Fernon, 640 F.2d 609, 612 (5th Cir. 1981) (neither the otherwise applicable Florida statute of limitations nor laches was a bar to the Government's right to recover); United States v. Alvarado, 5 F.3d 1425, 1427 (11th Cir. 1993); see also Securities & Exch. Comm. v. Toomey, 866 F. Supp. 719, 725 (S.D.N.Y. 1992). Additionally, unless

the Government engaged in affirmative and egregious misconduct equitable estoppel is not available as a defense. Sanz v. U.S. Security Ins. Co., 328 F.3d 1314, 1320 (11th Cir. 2003); cf S.E.C. v. Gulf Western Industries, Inc., 502 F. Supp. 343, 348 (D.D.C. 1980) ("[e]quitable estoppel has been applied against the government in order to prevent an 'egregious injustice.'") While the Court does not condone the four year delay before seeking disgorgement, the Court does not find any actions by the Commission that rise to the level of affirmative and egregious misconduct. Defendants consented to the entry of the Judgments and were fully aware of the Commission's right to seek disgorgement and prejudgment interest. The Commission's delay did not diminish these rights and the defense of equitable estoppel in inapplicable in this action.

Having established that the Commission is entitled to disgorgement, the Court must now determine the amount. The Commission argues that because of the Defendants' poor record keeping, it could seek to disgorge the entire amount the fraud raised. (Motion for Disgorgement, DE 22, p. 10.) However, the Commission is not seeking the entire amount, the Commission is seeking $8,117,527, the amount of unidentified payments likely to represent the ill-gotten gains. (Id.)

Defendants argue that the Commission is seeking disgorgement "without proof of who or where said monies have gone and further seeks to assert that the whole eight million dollars was received by Defendants." (Response, DE 25, p. 4.) Defendants state that the Commission failed to meet its burden to show the amount of assets subject to the disgorgement. (Id., at p. 10.)

The Affidavit of Soneet R. Kapila ("Kapila"), the Commission's forensic accountant states that the total amount of funds disbursed to or on behalf of Silverman

and Brenner includes at least $75,000 in annual salaries since May 1, 2001 as well as 5% of the net income from each investment made by the IDT Group and 5% of the equity received by the IDT Group for any venture capital investments made. (Affidavit of Soneet R. Kapila, DE 22-2, p. 10-11.) Despite working in excess of 600 hours to decipher the accounting, Kapila could only identify $50,000 as being dispersed by the IDT Funds to Brenner and could identify no disbursements for Silverman. (Id., at p. 7,12.) Kapila concluides that the $8.1 million in disbursements made by the IDT Funds remains unidentified and it is possible that the additional payments to Silverman and Brenner may be embedded in this unidentified amount. (Id., at p. 13.)

The Court finds that Defendants' record-keeping or lack thereof have obscured the exact amounts of their illicit gains. As evidenced by the forensic accountant's affidavit, the net aggregate payments to Silverman and Brenner are obviously inconsistent with the fee structure. (Affidavit of Soneet R. Kapila, DE 22-2, p. 12.) "Where the defendant's own recalcitrance and system of record keeping have so obscured matters that the lawful gains cannot be distinguished from the unlawful without incurring inordinate expense, it is well within the discretion of the court to rule that the measure of disgorgement will be the more readily measurable amount of losses incurred by defendants' customers in the unlawful transactions." CFTC v. The American Board of Trade, Inc., 803 F.2d 1242, 1252 (2nd Cir. 1986) (cited with approval by Calvo, 378 F.3d at 1217-1218).[2] So long as the measure of disgorgement

[2] The Court recognizes that CFTC v. American Metals Exchange Corp., 991 F.2d 71 (3d Cir. 1992) raised some questions about the use of CFTC v. The American Board of Trade, Inc., 803 F.2d 1242, 1252 (2nd Cir. 1986). The Court does not believe the concerns raised in American Metals are present in this action. Here, even without a

is reasonable, any risk of uncertainty falls on Silverman and Brenner. Calvo, 378 F.3d at 1217 (internal citation omitted).

Taking the facts of the Complaint as true, as the Court must under the agreed upon Judgements, the entire amount of the fraud was approximately $33 million. (Silverman Judgment, DE 19, p. 7; Brenner Judgment, DE 21, p. 7; Complaint, DE 1, p. 1.) Based on the extensiveness of the fraud and Defendant's poor of record keeping, the Court finds that the unidentified $8.1 million, approximately 22% of the disbursements made by the IDT Funds, is a reasonable estimate of the ill-gotten gains obtained by Silverman and Brenner. See e.g. Calvo, 378 F.3d at 1217 - 18. The burden then shifts to defendants to demonstrate that the SEC's estimate is not a reasonable approximation. Id.

Brenner and Silverman rely on their affidavits attesting to the fact that they never received $8 million and this amount was lost on the stock market. (Response Ex B. Silverman Affidavit, DE 25-3, p. 2; Response Ex C. Silverman Affidavit, DE 25-3, p. 2.) Defendants argue that their living arrangements at the time further evidence that they did not receive the $8 million. For example, Defendants state that they were living in homes valued at approximately three hundred thousand dollars and driving cars valued at less than thirty thousand dollars. (Id., p. 4, 6.) However, Defendants do not provide any documentation in support of this statement. Nor do Defendants provide any evidence or information about the amount of profits they actually received or any

---

hearing, there is documented evidence of the difficulty in calculating the ill-gotten gains and the total losses are significantly more than the amount being assessed as disgorgement.

amount by which the disgorgement should be reduced. The Court finds that Brenner and Silverman will be jointly and severally liable for the disgorgement amount of $8,117,527.

**B. Prejudgment Interest**

The court has discretion to impose prejudgment interest to divest defendants of any benefit accrued from the use of the ill-gotten gain. S.E.C. v. Yun, 148 F. Supp. 2d 1287, 1293 (M.D. Fla. 2001). To award pre-judgment interest the Court must establish the judgment amount, the prejudgment interest rate, and the date from which prejudgment interest accrues. S.E.C. v. Carrillo, 325 F.3d 1268, 1272 (11th Cir. 2003). Courts have routinely adopted the IRS underpayment rate and the time frame for imposing prejudgment interest usually starts with the date of the unlawful gain and ends with the entry of judgment. Yun, 148 F. Supp. 2d at 1293.

The Commission asks the court to use the delinquent tax rate established by the Internal Revenue Service, IRC § 6621(a)(2), and assess prejudgment interest on a quarterly basis from the date the Complaint was filed to the date the Motion for Disgorgement was filed. (Motion for Disgorgement, DE 22, p. 11.) According to the Commission, under this calculation, the total prejudgment interest amount is $2,606,739.86. (Id.) Defendants do not address this argument.

Pursuant to the Judgments consented to by the Defendants, the Commission is entitled to prejudgment interest on all ill-gotten profits or proceeds that they individually received, directly or indirectly as a result of the acts or courses of conduct described in the Complaint. The disgorgement amount subject to the prejudgment interest is

$8,117,527 and the Court will use the delinquent tax rate established by the Internal Revenue Service, IRC § 6621(a)(2). The Court will not use the end date proposed by the Commission. Even though Defendants might have used of the ill-gotten gain until the filing of the Motion for Disgorgement, the Court finds that using this date would effectively charge the Defendants for the Commission's four year delay before seeking disgorgement. The Court, in its discretion, will use the date the Complaint was filed as the start date and the date of the Judgment of Permanent Injunction and Other Relief as the end date. Therefore, prejudgment interest is the amount accrued on $8,117,527 at the delinquent tax rate establish by the Internal Revenue Service, IRC § 6621(a)(2), from February 19, 2004 to May 7, 2004.

**C. <u>Civil Penalties</u>**

Civil penalties are divided into a three-tier system. The tiers are described as follows:

> (A) First tier
>
> The amount of the penalty shall be determined by the court in light of the facts and circumstances. For each violation, the amount of the penalty shall not exceed the greater of (i) $5,000 for a natural person or $50,000 for any other person, or (ii) the gross amount of pecuniary gain to such defendant as a result of the violation.
>
> (B) Second tier
>
> Notwithstanding subparagraph (A), the amount of penalty for each such violation shall not exceed the greater of (i) $50,000 for a natural person or $250,000 for any other person, or (ii) the gross amount of pecuniary gain to such defendant as a result of the violation, if the violation described in paragraph (1) involved fraud, deceit, manipulation, or deliberate or reckless disregard of a regulatory requirement.

> (C) Third tier
>
> Notwithstanding subparagraphs (A) and (B), the amount of penalty for each such violation shall not exceed the greater of (i) $100,000 for a natural person or $500,000 for any other person, or (ii) the gross amount of pecuniary gain to such defendant as a result of the violation, if--
>
> (I) the violation described in paragraph (1) involved fraud, deceit, manipulation, or deliberate or reckless disregard of a regulatory requirement; and
>
> (II) such violation directly or indirectly resulted in substantial losses or created a significant risk of substantial losses to other persons.

15 U.S.C. §77t(d)(2); see also 15 U.S.C. §78u(d)(3). The Commission argues that the Defendants merit third tier penalties because they essentially ran the IDT fraud and mislead and defrauded hundreds of investors out of approximately $33 million. (Motion for Disgorgement, DE 22, p. 13.) Defendants did not respond to this argument.

Taking all factual allegations in the Complaint as true, the Court finds that the conduct of Defendants Silverman and Brenner involved fraud and deceit, and their reckless disregard of the securities laws caused direct or indirect and substantial losses to investors. Defendants misled investors about: the growth and rates of return on the touted investments, the safety of the investments, the compensation structure for the IDT Funds' and IDT Group's traders, as well as their experience and abilities to run the IDT Funds, and its successor, IDT Group. (Complaint, DE 1, p. 5, ¶ 12.) The Defendants' actions defrauded hundreds of investors out of approximately $33 million. (Id., at p. 1., ¶ 1.) The Court finds that Silverman shall pay third tier civil penalties of $100,000 and Brenner is responsible for third tier penalties of $100,000 .

III. CONCLUSION

Based on the foregoing it is **ORDERED AND ADJUDGED** as follows:

1. Plaintiff's Motion and Memorandum of Law to Set Disgorgement And Civil Penalty Amounts As To Defendants [DE 22] is **GRANTED IN PART**.

2. Defendants Silverman and Brenner are jointly and severally liable for the disgorgement amount of $8,117,527, together with prejudgment interest at the delinquent tax rate established by the Internal Revenue Service, IRC § 6621(a)(2), from February 19, 2004 to May 7, 2004.

3. Defendant Silverman is liable for the civil penalty amount of $100,000 and Brenner is liable for the civil penalty amount of $100,000.

4. The Court shall enter a separate Final Judgment consistent with this Order.

**DONE AND ORDERED** in Chambers at Fort Lauderdale, Broward County, Florida, this 27 day of October, 2008.

James I. Cohn

**JAMES I. COHN**
**United States District Court**

Copies to:
All counsel of record on CM\ECF